IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| TAMARA TAYLOR, Individually and on behalf of her minor child, N.B.; N.B., <br><br> Plaintiffs, <br><br> vs. <br><br> CITY AND COUNTY OF HONOLULU; HAWAII STATE DEPARTMENT OF EDUCATION; TERRI RUNGE; CHRISTINE NEVES; COREY PEREZ; WARREN FORD; HPD DEFENDANTS 1-10; DOE-HI DEFENDANTS 1-10, <br><br> Defendants. | CIV. NO. 22-00013 HG-KJM |

**ORDER GRANTING, IN PART, AND DENYING, IN PART, DEFENDANT CITY AND COUNTY OF HONOLULU'S MOTION TO DISMISS SECOND AMENDED COMPLAINT (ECF No. 50) WITH LEAVE TO AMEND**

**and**

**DENYING DEFENDANTS CHRISTINE NEVES, COREY PEREZ, AND WARREN FORD'S MOTION TO DISMISS SECOND AMENDED COMPLAINT (ECF No. 51)**

The case arises out of allegations that on January 10, 2020, N.B., a 10-year-old Black girl, was handcuffed and arrested by Honolulu Police Officers at her public elementary school. N.B. was allegedly arrested for her participation in creating a cartoon-style drawing with other children.

On June 8, 2022, Plaintiffs filed the Second Amended Complaint. The Second Amended Complaint asserts a number of causes of action by N.B. and her mother Tamara Taylor against the City and County of Honolulu, the Hawaii State Department of

1

Education, and several individual defendants.  The individuals include the Vice-Principal of the school and the three Honolulu Police Officers who arrested and handcuffed N.B.

Defendant City and County of Honolulu filed a Motion to Dismiss as to all claims against it.

The Defendant Honolulu Police Officers Christine Neves, Corey Perez, and Warren Ford filed a Motion to Dismiss the Second Amended Complaint for failure to state a claim.  The Defendant Officers also seek qualified immunity for the federal law causes of action against them and conditional privilege for the state law causes of action against them.

Defendant City and County of Honolulu's Motion to Dismiss (ECF No. 50) is **GRANTED, IN PART, and DENIED, IN PART.**

Defendants Neves, Perez, and Ford's Motion to Dismiss (ECF No. 51) is **DENIED.**

Plaintiffs are granted **LEAVE TO AMEND** to file a Third Amended Complaint.

## PROCEDURAL HISTORY

On January 7, 2022, Plaintiffs filed a Complaint. (ECF No. 1).

On March 7, 2022, Plaintiffs filed a First Amended Complaint.  (ECF No. 20).

On April 4, 2022, Defendant Terri Runge filed a Motion to Dismiss First Amended Complaint.  (ECF No. 27).

2

On May 23, 2022, the Court held a hearing on Defendant Runge's Motion to Dismiss.  (ECF No. 43).

On May 25, 2022, the Court issued an ORDER GRANTING DEFENDANT TERRI RUNGE'S MOTION TO DISMISS FIRST AMENDED COMPLAINT WITH LEAVE TO AMEND.  (ECF No. 44).

On June 8, 2022, Plaintiffs filed a SECOND AMENDED COMPLAINT.  (ECF No. 48).

On June 22, 2022, Defendant City and County of Honolulu filed a MOTION TO DISMISS SECOND AMENDED COMPLAINT.  (ECF No. 50).

On the same date, Defendants Neves, Perez, and Ford filed their MOTION TO DISMISS SECOND AMENDED COMPLAINT.  (ECF No. 51).

Also on June 22, 2022, Defendant City and County of Honolulu along with Defendants Neves, Perez, and Ford filed a Motion to Unseal regarding the drawing at issue in the case.  (ECF No. 52).

On July 7, 2022, the Court held a hearing on the City Defendants' Motion to Unseal.  (ECF No. 58).  The Court directed the Parties to engage in discovery to determine how and by whom the drawing was created, necessary facts the Court needs in order to rule on the Motion to Unseal.  (Id.)  Also at the hearing, the Court set a briefing schedule on the City Defendants' June 22, 2022 Motions to Dismiss.  (Id.)

On September 23, 2022, Plaintiffs filed their Opposition to Defendant City and County of Honolulu's Motion to Dismiss.  (ECF No. 107).

On the same date, Plaintiffs filed their Opposition to Defendant Officers Neves, Perez, and Ford's Motion to Dismiss. (ECF No. 104).

On September 28, 2022, the Court held a further hearing on the City Defendants' Motion to Unseal. (ECF No. 110). The Court denied the City Defendants' Motion to Unseal. (Id.) At the hearing, the Court set the hearing date on the City Defendants' Motions to Dismiss. (Id.)

On October 7, 2022, the City Defendants filed their Replies. (ECF Nos. 111 and 112).

On October 17, 2022, the Magistrate Judge issued an Order on the Parties' Discovery Dispute. (ECF No. 118).

On October 31, 2022, the City Defendants filed an Appeal of the Magistrate Judge's October 17, 2022 Discovery Order. (ECF No. 121).

On November 14, 2022, Plaintiffs filed their Opposition to the City Defendants' Appeal of the Discovery Order. (ECF No. 124).

On November 17, 2022, the District Court issued a Minute Order denying the City Defendants' Appeal of the Magistrate Judge's Discovery Order. (ECF No. 125).

On December 5, 2022, the Court held a hearing on the City Defendants' June 22, 2022 Motions to Dismiss. (ECF No. 128).

**BACKGROUND**

The Second Amended Complaint asserts that N.B. is a Black girl with a disability.  (Second Amended Complaint ("SAC") at ¶ 2, ECF No. 48).  Plaintiffs allege N.B. had been diagnosed with Attention-Deficit/Hyperactivity Disorder ("ADHD"), and that the Hawaii Department of Education had prepared a plan pursuant to Section 504 of the Rehabilitation Act to accommodate her disability.  (Id. at ¶¶ 30-31).

On January 9, 2020, when N.B. was ten-years-old, she was a student at Honowai Elementary School ("Elementary School") in Honolulu, Hawaii.  (Id. at ¶ 2).

**The Second Amended Complaint alleges the following facts**:

Plaintiffs state that on January 9, 2020, N.B. and other children made a drawing following an incident where N.B. was bullied.  (Id. at ¶ 3).  The drawing, which was submitted for in camera review, depicts a girl colored in blue and red, with the girl holding what appears to be a cartoon firearm.  In the drawing, there appears to be a head on the ground and various scribbles and words.  Plaintiffs allege that the drawing was made with "a message for E."  (Id. at ¶ 37).  On the face of the drawing, however, it appears the drawing was addressed to two individuals, stating: "This is for E[     ] and K[    ]."

The drawing remains under seal.  The Parties have not provided sufficient information to the Court that would support

5

unsealing the document at this time.  As the Court explained at the hearing on the Motions to Dismiss, there are questions of fact as to the authorship of the drawing, the chain of custody of the drawing, and the publication of the drawing that prevent the Court from ruling on whether to unseal the document.  (Transcript of Hearing at pp. 5, 8, ECF No. 140).

The Second Amended Complaint asserts that "N.B did most of the drawing" but "other [unnamed] classmates made suggestions about its content, colored it, and wrote parts of the message." (SAC at ¶ 37, ECF No. 48).  It is unclear from the record which specific portions were completed by N.B.  The Second Amended Complaint does not specify who else participated in the drawing or who made which components of the drawing.

Plaintiffs allege that N.B. used drawing as a mechanism to cope with her ADHD and bullying at school.  (Id. at ¶ 34). Plaintiffs assert N.B. thought the drawing was a bad idea and did not want to give it to anyone after the drawing was completed. (Id. at ¶ 38).

The Second Amended Complaint claims that one of the children involved in the drawing took it to another child, identified as K.  (Id. at ¶ 39).

Plaintiffs assert that the drawing was also brought to the school's attention by K. on the day it was made, but no action was taken by school officials after they received the drawing. (Id. at ¶¶ 4, 40-41).

According to the Second Amended Complaint, on the following morning, January 10, 2020, at approximately 7:40 a.m., the parent of K. went to the Elementary School.  (Id. at ¶¶ 5, 42).  According to the Second Amended Complaint, K.'s mother "insisted that the school call the police" with respect to the drawing.  (Id. at ¶ 5).

Plaintiffs claim that approximately an hour later, the Vice Principal of the Elementary School, Defendant Terri Runge, called Plaintiff Tamara Taylor at work.  (Id. at ¶¶ 43, 47).  According to Plaintiffs, Defendant Runge told Plaintiff Taylor that she needed to come to the Elementary School because they were about to call the police because her daughter N.B. had made a drawing and it was passed to another student.  (Id. at ¶ 43).  Defendant Runge told Ms. Taylor that the police were being called at the request of K.'s mother.  (Id. at ¶ 44).

Defendant Runge then called the police at the request of K.'s mother.  (Id. at ¶ 45).

The Second Amended Complaint states that following Defendant Runge's call to the police, Defendants Honolulu Police Officers Christine Neves, Corey Perez, and Warren Ford arrived at the Elementary School.  (Id.)  N.B.'s mother, Plaintiff Taylor, arrived at the Elementary School at around 10:20 a.m.  (Id. at ¶ 47).

According to the Second Amended Complaint, N.B. was kept away from her mother and was not informed that her mother had

arrived at the Elementary School.  (Id. at ¶ 51).  The Second
Amended Complaint alleges that without Plaintiff Taylor's
knowledge or consent and without any Miranda warnings, N.B. was
interrogated by the Defendant Honolulu Police Officers and Hawaii
Department of Education Staff.  (Id. at ¶ 52).

The Second Amended Complaint asserts that N.B.'s mother,
Plaintiff Taylor, attempted to leave the room she was brought to
at the Elementary School, but she was prevented from doing so.
(Id. at ¶ 53).

Plaintiffs allege N.B. was moved to the nurse's office.
(Id. at ¶ 54).  According to the Second Amended Complaint, N.B.
mentioned to the nurse that she wondered what spending one day in
jail would be like.  (Id.)  Plaintiffs allege that the nurse
relayed the comments to Defendant Runge and the Defendant Police
Officers.  (Id.)  The Defendant Officers allegedly became upset
because they believed N.B. was inappropriately treating the
situation as a joke.  (Id. at ¶¶ 54-55).

The Second Amended Complaint alleges that Plaintiff Taylor
again attempted to exit the room where she was kept away from her
daughter, but Defendant Honolulu Police Officer Ford blocked her.
(Id. at ¶ 56).  Plaintiffs assert that Plaintiff Taylor asked to
see her daughter but was prevented from seeing her.  (Id.)

According to the Second Amended Complaint, after hearing the
nurse relay N.B.'s comment, the Defendant Honolulu Police
Officers put the ten-year-old elementary school student N.B. in

handcuffs and arrested her for terroristic threatening.  (Id. at ¶ 57).  They then placed her in a police car and drove her to Pearl City Police Station.  (Id.)

Plaintiffs allege that N.B. cried and that the adult handcuffs left marks on her when they were taken off.  (Id. at ¶¶ 57-58).  One of the Defendant Officers purportedly commented during the arrest, "Oh, so she wanted to see what jail is like for a day."  (Id.)

The Second Amended Complaint asserts that Plaintiff Taylor was not informed of the arrest prior to her child N.B. being handcuffed and placed in the police car.  (Id. at ¶¶ 60-61).  Plaintiff Taylor alleges she only learned of the arrest because she was asked to come outside by two of the police officers and she saw her child in the back of the police car.  (Id. at ¶¶ 60-61).

Plaintiffs allege that Ms. Taylor went to the Pearl City Police Station, and N.B. was released.  (Id. at ¶ 62).  No charges were filed against N.B.  (Id. at ¶ 64).

According to Plaintiffs, the other children involved in the drawing, referred to in the Second Amended Complaint as non-Black, were not investigated or disciplined.  (Id. at ¶ 66).  The identities of the other children involved have not been disclosed to the Court.

**STANDARD OF REVIEW**

The Court must dismiss a complaint as a matter of law pursuant to Federal Rule of Civil Procedure 12(b)(6) where it fails "to state a claim upon which relief can be granted."  When considering a Rule 12(b)(6) motion to dismiss, the Court must presume all allegations of material fact to be true and draw all reasonable inferences in favor of the non-moving party.  Pareto v. F.D.I.C., 139 F.3d 696, 699 (9th Cir. 1998).  Conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss.  Id.

To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim of relief that is plausible on its face.  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.  Id. (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 556 (2007).

The complaint "must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively" and "must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation." AE ex rel. Hernandez v. Cnty of Tulare, 666 F.3d 631, 637 (9th Cir. 2012) (internal quotation

omitted).

## ANALYSIS

There are two Motions before the Court:

<u>First</u>, **Defendant City and County of Honolulu's Motion to Dismiss** seeks dismissal of all claims against it pursuant to Federal Rule of Civil Procedure 12(b)(6).

<u>Second</u>, **Defendant Honolulu Police Officers Christine Neves, Corey Perez, and Warren Ford's Motion to Dismiss** seeks dismissal of all claims against them pursuant to Fed. R. Civ. P. 12(b)(6).

The Defendant Officers also seek qualified immunity for the federal law causes of action against them and conditional privilege for the state law causes of action against them.

This Order is limited to the Motions to Dismiss filed by Defendants City and County of Honolulu and Defendants Honolulu Police Officers Christine Neves, Corey Perez, and Warren Ford.

This Order does not address any claims brought against the Defendant Hawaii Department of Education or Defendant Terri Runge.

The Court addresses the two Motions to Dismiss by analyzing each relevant cause of action set forth in the Second Amended Complaint.

The Second Amended Complaint asserts the following causes of action against **Defendants Honolulu Police Officers Christine Neves, Corey Perez, and Warren Ford**:

1.  False Arrest In Violation Of the Fourth Amendment to the United States Constitution Pursuant to 42 U.S.C. § 1983

2.  False Arrest In Violation Of the Fourteenth Amendment to the United States Constitution Pursuant to 42 U.S.C. § 1983

3.  False Arrest Pursuant to Hawaii State Law

4.  Excessive Force In Violation Of the Fourth Amendment to the United States Constitution Pursuant to 42 U.S.C. § 1983

5.  Excessive Force In Violation Of the Fourteenth Amendment to the United States Constitution Pursuant to 42 U.S.C. § 1983

The Second Amended Complaint asserts the following causes of action against **Defendant City and County of Honolulu**:

6.  False Arrest Pursuant to Hawaii State Law

7.  Monell Liability For Excessive Force Based On Failure To Train

8.  Monell Liability For Excessive Force Based On Unconstitutional Customs, Practices, And Policies

9.  Violations of Title VI of the Civil Rights Act

10. Violations of Title II of the Americans With Disabilities Act And Section 504 of the Rehabilitation Act

11. Negligent Training pursuant to Hawaii State Law

12. Negligent Supervision pursuant to Hawaii State Law

## I.   The Hawaii State Constitution Does Not Provide A Basis For Section 1983 Liability

As an initial matter, Plaintiffs cite to alleged violations of the Hawaii State Constitution in support of their claims brought pursuant to 42 U.S.C. § 1983.  Section 1983 is a remedy for violations of federal rights.  Violations of state law, including a state constitution, are not cognizable pursuant to Section 1983.  Silva v. City and Cnty. of Honolulu, 2017 WL 2801029, *9 (D. Haw. June 28, 2017).

In addition, courts in Hawaii have declined to recognize a direct private cause of action for damages resulting from alleged violations of the Hawaii State Constitution.  Kaahu v. Randall, 2018 WL 472996, *7 (D. Haw. Jan. 18, 2018).

Plaintiffs' claims against the Defendants pursuant to the Hawaii State Constitution are **DISMISSED WITH PREJUDICE.**

## II.  Causes of Action Brought Against Defendants Honolulu Police Officers Neves, Perez, and Ford

### A.   False Arrest In Violation Of the Fourth And Fourteenth Amendments to the United States Constitution Pursuant to 42 U.S.C. § 1983

Title 42 of United States Code Section 1983 provides a cause of action against state actors who violate an individual's rights under federal law.  Filarsky v. Delia, 566 U.S. 377, 380 (2012).

Here, Plaintiffs assert that ten-year-old N.B. was falsely arrested on January 10, 2020, in violation of the Fourth and

Fourteenth Amendments to the United States Constitution.

### 1.    Fourth Amendment: False Arrest Claim

The Fourth Amendment to the United States Constitution confers the right to protection from arrest without probable cause.  Beck v. Ohio, 379 U.S. 89, 91 (1964).  A claim for false arrest is cognizable pursuant to Section 1983 as a violation of the Fourth Amendment when the arrest was without probable cause or other justification.  Dubner v. City and Cnty. of San Francisco, 266 F.3d 959, 964 (9th Cir. 2001).  A plaintiff bears the burden of proof on the issue of an unlawful arrest, but she can make a prima facie case by showing the arrest was a warrantless one.  Id. at 965.

Courts have explained that probable cause to arrest the plaintiff is an absolute defense to any claim pursuant to Section 1983.  See Hart v. Parks, 450 F.3d 1059, 1069 (9th Cir. 2006).

Probable cause to arrest exits when officers have knowledge or reasonably trustworthy information sufficient to lead a person of reasonable caution to believe that an offense has been committed by the person being arrested.  Fayer v. Vaughn, 649 F.3d 1061, 1064 (9th Cir. 2011) (per curiam); see Haw. Rev. Stat. § 803-5.

### a.    Terroristic Threatening

According to the Second Amended Complaint, the Defendants Honolulu Police Officers Neves, Perez, and Ford arrested the ten-

14

year-old child N.B. for "terroristic threatening" without a warrant at the insistence of a parent of a child at N.B.'s school.  (SAC at ¶¶ 44, 49, 57, ECF No. 48).

> Terroristic threatening occurs when a person:
>
> [T]hreatens, by word or conduct, to cause bodily injury to another person or serious damage or harm to property, including the pets or livestock, of another or to commit a felony: (1) with the intent to terrorize, or in reckless disregard of the risk of terrorizing, another person; or (2) with intent to cause, or in reckless disregard of the risk of causing evacuation of a building, place of assembly, or facility of public transportation.

Haw. Rev. Stat. § 707-715.

The Second Amended Complaint takes the position that no reasonable officer would believe that the offense of Terroristic Threatening had been committed by ten-year-old N.B. based solely on the drawing in this case.  The drawing is a simplistic cartoon-style picture by elementary age students.  Plaintiffs allege no reasonable officer would have probable cause to find that there was a true threat to cause bodily injury to another, especially when the drawing was never published or delivered as a threat by N.B., the only child that the Officers arrested.

Based on the allegations in the Second Amended Complaint, multiple students participated in the drawing.  It is unclear from the record still how many children contributed to the drawing.  It is unknown to the Court at this time which children drew or wrote which parts of the cartoon and whether N.B. made the drawing of her own volition or whether the minor child was

directed to draw parts of it by other children.

The allegations in the Second Amended Complaint assert that N.B. never communicated a threat. The Second Amended Complaint alleges that N.B. did not have any criminal intent to threaten or terrorize. Plaintiffs allege that N.B. knew the drawing was a bad idea and decided not to show or deliver it after it was completed. The Second Amended Complaint asserts that N.B. did not publish the drawing. Rather, according to the allegations, it was another child who participated in the drawing who gave it to yet another child identified as K. K. informed her mother about the drawing.

Plaintiffs allege that it was K.'s mother who then complained about the drawing incident. The Second Amended Complaint asserts that K.'s mother insisted on the arrest of N.B.

Defendants make a conclusory argument that they had probable cause to arrest N.B. Defendants request that the Court view the allegations from the perspective of the Defendant Officers rather than based on the facts as alleged in the Second Amended Complaint. The Court is limited to the allegations in the complaint on a Motion to Dismiss. Ariz. All. for Cmty. Health Ctrs. v. Ariz. Health Care Cost Containment Sys., 47 F.4th 992, 998 (9th Cir. 2022). The Court is required to consider the facts in the Second Amended Complaint as true and in the light most favorable to the Plaintiffs in evaluating Defendants' Motion, rather than in a light most favorable to the Defendants. Iqbal,

16

556 U.S. at 678.

The Court recognizes that the Second Amended Complaint asserts that "N.B. with the assistance of three classmates drew a picture and wrote a message for E."  (SAC at ¶ 37, ECF No. 48). A review of the drawing in camera, however, reveals that the drawing appears addressed not just to E., but also appears to be addressed to K.  The Second Amended Complaint ignores the writing on the drawing that indicates it was also addressed to K.

At this stage in the proceedings, however, the Court reviews the Second Amended Complaint in a light most favorable to Plaintiffs.  The allegations set forth in the Second Amended Complaint allege a claim of false arrest, claiming it was warrantless and without probable cause.  The allegations plausibly state that the Defendant Officers lacked probable cause to arrest N.B. for Terroristic Threatening.

### b.  Harassment

The United States Supreme Court has explained that when there is probable cause to arrest a suspect for any crime, the arrest does not violate the Fourth Amendment, even if that crime was not actually charged.  Devenpeck v. Alford, 543 U.S. 146, 153-54 (2004).

Defendants argue that even if there was not probable cause to arrest N.B. for Terroristic Threatening, there was probable cause to arrest her for Harassment in violation of Haw. Rev.

17

Stat. § 711-1106.

Defendants misunderstand the interplay between Terroristic Threatening and Harassment under Hawaii law.  Contrary to Defendants' argument, Harassment is not a lesser included offense of Terroristic Threatening.  State v. Burdett, 762 P.2d 164, 166-67 (Haw. 1988).

In Burdett, the Hawaii Supreme Court ruled that "Harassment has a **more culpable** mental state than terroristic threatening in the first degree." Id. (emphasis added).  For a Harassment charge, the actor's communication must **actually cause** the recipient to reasonably believe that the actor intends to cause bodily injury to the recipient or another.  State v. Calaycay, 449 P.3d 1184, 1197 (Haw. 2019) (emphasis added).

Based on the allegations in the Second Amended Complaint, there was no warrant for N.B.'s arrest and there was no basis for probable cause to arrest her for Harassment.  The Second Amended Complaint asserts that there was no recipient of any harassment that could support probable cause for arrest.  Plaintiffs allege the drawing was never delivered by N.B.  The allegations provide that N.B. did not have any intent to harass or threaten.  Plaintiffs assert that N.B. knew the drawing was a bad idea so she did not give it to anyone.  The allegations in the Second Amended Complaint assert that one of the children who participated in the drawing took the drawing and gave it to K., who then took the drawing, gave it to school officials, and told

her mother.

Defendants' reliance on the Harassment statute at the motion to dismiss stage is misplaced.  In evaluating Defendants' Motion to Dismiss, the Court is bound by the Plaintiffs' allegations in the Second Amended Complaint.  The allegations are that N.B. never delivered any threat or caused any harassment.

Plaintiffs have sufficiently alleged a claim for false arrest in violation of the Fourth Amendment to the United States Constitution pursuant to Section 1983.

### 2. Fourteenth Amendment Claims Of Equal Protection And Familial Association: False Arrest

#### a. Equal Protection

To state a Section 1983 claim for a violation of the Equal Protection Clause of the Fourteenth Amendment, a plaintiff must allege that the violation was committed with an intent or purpose to discriminate based upon Plaintiff's membership in a protected class.  Lee v. City of Los Angeles, 250 F.3d 668, 686-87 (9th Cir. 2001).

Here, Plaintiffs have alleged an equal protection claim pursuant to the Fourteenth Amendment based on the allegations that the Defendant Officers falsely arrested N.B.  The Second Amended Complaint asserts that N.B. is a disabled, Black girl who was the only child arrested despite the fact that other non-disabled and non-Black children participated in the drawing. Plaintiffs have put forward allegations that Black and disabled

19

children are disproportionately arrested by the Honolulu Police Department as compared to other students.  (SAC at ¶¶ 80, 83-89, ECF No. 48).  Plaintiffs have provided sufficient allegations that N.B. was discriminated against based on her membership in a protected class.  The Second Amended Complaint sufficiently states a Equal Protection claim pursuant to the Fourteenth Amendment against the Defendant Officers.

### b.   Due Process

In addition to Equal Protection under the Fourteenth Amendment, Plaintiffs have alleged a Due Process Claim under the Fourteenth Amendment.  It is well established pursuant to the Due Process Clause of the Fourteenth Amendment to the United States Constitution that a parent has a fundamental liberty interest in the companionship and society of her child and that the government's interference with that liberty interest without due process of law is remediable pursuant to Section 1983.  Lee, 250 F.3d at 685-86.

Plaintiffs have adequately alleged a Due Process claim pursuant to the Fourteenth Amendment.  The Second Amended Complaint asserts that the Defendants' actions constituted an unwarranted interference with N.B. and her mother Plaintiff Taylor's right to familial association.

Defendant Officers' arguments that Defendant Taylor lacks standing to bring a Section 1983 claim ignore long-standing

precedent from the Ninth Circuit Court of Appeals.  There is
precedent establishing that there is a right to familial
association made by parents of children seized by government
officials and such claims are properly made pursuant to the
Fourteenth Amendment.  <u>Keates v. Koile</u>, 883 F.3d 1228, 1236 (9th
Cir. 2018); <u>Porter v. Osborn</u>, 546 F.3d 1131, 1137 (9th Cir.
2008); see <u>Troxel v. Granville</u>, 530 U.S. 57, 65 (2000) (stating
that the interest of parents in the care, custody, and control of
their children is perhaps the oldest of the fundamental liberty
interests recognized by the United States Supreme Court).

Plaintiffs have sufficiently alleged facts to support a
Section 1983 claim in violation of the Fourteenth Amendment to
the United States Constitution.

### 3.   Qualified Immunity As To Plaintiffs' False Arrest Claims

Defendant Honolulu Police Officers Neves, Perez, and Ford
seek qualified immunity as to Plaintiffs' Section 1983 False
Arrest causes of action.

The doctrine of qualified immunity shields public officials
from personal liability when performing discretionary functions,
unless their conduct violates a statutory or constitutional right
that was clearly established at the time of the challenged
conduct.  <u>Ashcroft v. al-Kidd</u>, 563 U.S. 731, 735 (2011).  A
constitutional right is clearly established when a reasonable
official would have understood that what he was doing violated

that right.  Id. at 741; see Jackson v. City of Bremerton, 268
F.3d 646, 651 (9th Cir. 2001).  The contours of the right must
have been sufficiently clear in order for qualified immunity to
be denied.  al-Kidd, 563 U.S. at 741 (citing Anderson v.
Creighton, 483 U.S. 635, 640 (1987)).

The determination whether a right was clearly established
must be undertaken by examination of the specific context of the
case, not as a broad general proposition.  Pearson v. Callahan,
555 U.S. 223, 232 (2009).  The legal precedent establishing this
right must place the question beyond debate.  al-Kidd, 563 U.S.
at 741.  The inquiry is case specific but it is not so narrowly
defined as to preclude any potential claims without identical
fact patterns.  Kelley v. Borg, 60 F.3d 664, 667 (9th Cir. 1995).

Generally, courts follow a two-part inquiry in determining
if a government official is entitled to qualified immunity.

One, a court must decide whether the facts that a plaintiff
has demonstrated make out a violation of a constitutional right.
Pearson, 555 U.S. at 232.

Two, a court must decide if the right at issue was clearly
established at the time of defendant's conduct.  Id.

The two-part qualified immunity inquiry need not be
sequential.  Langfitt v. Pierce Cnty., 2023 WL 1798238, *5 (W.D.
Wash. Feb. 7, 2023) (explaining that the district courts have
discretion to address the two-part test for qualified immunity in
either order, citing Pearson, 555 U.S. at 236).

Determining claims of qualified immunity at the motion to dismiss stage raises special problems for legal decision-making. Keates, 883 F.3d at 1234.  It puts the court in the difficult position of deciding "far-reaching constitutional questions on a non-existent factual record."  Kwai Fun Wong v. United States, 373 F.3d 952, 957 (9th Cir. 2004).

Dismissal based on qualified immunity is not appropriate unless it can be determined based on the complaint alone that qualified immunity applies.  O'Brien v. Welty, 818 F.3d 920, 936 (9th Cir. 2016).

The qualified immunity inquiry is a fact-specific analysis and requires knowledge of all of the material facts of the specific context of the case.  Saucier v. Katz, 533 U.S. 194, 202 (2001) (test set forth in Saucier distinguished in Pearson, 555 U.S. at 236).  Qualified immunity is usually inappropriate at the dismissal stage, even when construing the facts in the light most favorable to the non-moving party, because the court is often without sufficient facts to make an appropriate inquiry.  See Morely v. Walker, 175 F.3d 756, 761 (9th Cir. 1999) (finding dismissal based on qualified immunity inappropriate pursuant to Fed. R. Civ. P. 12(b)(6)).

Plaintiffs have cited numerous cases demonstrating that it was clearly established that officers could not conduct a warrantless arrest of a suspect without probable cause. Caballero v. City of Concord, 956 F.2d 204, 206 (9th Cir. 1992);

see Gasho v. United States, 39 F.3d 1420, 1429 (9th Cir. 1994);
Beck v. City of Upland, 527 F.3d 853, 871 (9th Cir. 2008).

Plaintiffs also rely on Hawaii state law explaining the
elements of Terroristic Threatening to demonstrate that the law
was clearly established at the time of N.B.'s arrest.  Plaintiffs
assert that it was clearly established that it would be unlawful
to arrest a ten-year-old disabled child for a cartoon-style
drawing made with other children without probable cause.
Plaintiffs argue that it was particularly clear to any reasonable
officer that it was unlawful to arrest the child when they knew
or should have known the drawing was made by a number of
students, and where there was no basis to know which child made
which part of the drawing.  The Plaintiffs' position in the
Second Amended Complaint is that the drawing could not be
considered a true threat to any reasonable officer.  In re PP,
325 P.3d 647, 657-58 (Haw. App. 2014); State v. Chung, 862 P.2d
1063, 1072-73 (Haw. 1993).

Based on the allegations in the Second Amended Complaint and
the undeveloped record, qualified immunity at this stage in the
proceedings is inappropriate.  The record is insufficiently
developed.  The Court does not have the facts that are necessary
to determine qualified immunity concerning the false arrest
claims.  Peck v. Montoya, 51 F.4th 877, 885-86 (9th Cir. 2022)
(citing Estate of Anderson v. Marsh, 985 F.3d 726, 732 (9th Cir.
2021)).

There is insufficient information as to how many children were involved in the drawing, which children contributed to which parts of the drawing and/or words, and whether the drawing was ever presented as a threat.  There are also questions raised concerning knowledge, intent, and reasonableness.

Defendant Officers Neves, Perez, and Ford's Motion to Dismiss Plaintiffs' claims for False Arrest pursuant to Section 1983 is **DENIED.**

Defendant Officers Neves, Perez, and Ford's Request for Qualified Immunity for False Arrest at this stage in the proceedings is **DENIED.**

### B.   <u>False Arrest</u> Pursuant to <u>Hawaii State Law</u>

####    1.   Hawaii State Law False Arrest Elements

To assert a false arrest claim pursuant to Hawaii state law, a plaintiff must allege:

(1)   the detention or restraint of one against her will; and,

(2)   the unlawfulness of such detention or restraint.

<u>Reed v. City & Cnty. of Honolulu</u>, 873 P.2d 98, 109 (Haw. 1994).

The determination that the arresting officer had probable cause is a defense to a claim of false arrest.   <u>Id.</u>

Just as with Plaintiff N.B.'s Section 1983 false arrest claims, the Second Amended Complaint alleges sufficient facts to support a false arrest claim pursuant to Hawaii state law. Plaintiffs allege there was no warrant for the arrest of N.B.

25

Plaintiffs also provide sufficient allegations to support their claim that no reasonable officer would have believed there was probable cause to arrest N.B. for Terroristic Threatening or any other crime.

### 2. Conditional Privilege As To Plaintiffs' State Law False Arrest Claim

Defendant Officers Neves, Perez, and Ford seek to dismiss the state law false arrest claim pursuant to conditional privilege.

Hawaii law provides that a nonjudicial government official has a qualified or conditional privilege with respect to tortious actions taken in the performance of a public duty. Towse v. State of Hawaii, 647 P.2d 696, 702 (Haw. 1982). Conditional privilege shields the government official from liability unless the plaintiff demonstrates by clear and convincing proof that the official was motivated by malice and not by an otherwise proper purpose. Long v. Yomes, Civ. No. 11-00136 ACK-KSC, 2011 WL 4412847, *6 (D. Haw. Sept. 20, 2011).

"Malicious or improper purpose" is defined in "its ordinary and usual sense." Awakuni v. Awana, 165 P.3d 1027, 1042 (Haw. 2007). The Hawaii Supreme Court adopted the Black's Law Dictionary definitions of "maliciousness" and "malice" which provide the following meanings:

> (1)   substantially certain to cause injury and without just cause or excuse;

(2)   the intent, without justification or excuse, to commit a wrongful act, reckless disregard of the law or of a person's legal rights; and,

(3)   ill will, wickedness of heart. (<u>Id.</u>)

The Second Amended Complaint asserts that Defendant Officers Neves, Perez, and Ford acted knowingly, willfully, with malicious intent, and in reckless disregard for N.B.'s constitutional rights.  Plaintiffs assert that the Defendants discriminated against N.B. based on her race and her disability.  Plaintiffs cite statistics to support the claim that the Honolulu Police Department has disproportionally targeted similarly situated individuals and argue the Officers arrested N.B. without probable cause, for an improper purpose, and with a reckless disregard for her rights.  (SAC at ¶¶ 66, 80, 83-89, ECF No. 48).

Plaintiffs allege the Defendant Officers became upset because N.B. made a comment to the nurse stating she wondered what a day in jail would be like.  (<u>Id.</u> at ¶¶ 54-55).  Plaintiffs claim that the Defendant Officers disregarded N.B.'s rights and arrested her without a warrant and without probable cause, in part, because they believed N.B. was treating the situation as a joke.  (<u>Id.</u>)

Defendant Officers Neves, Perez, and Ford's Motion to Dismiss Plaintiffs' claims for False Arrest pursuant to Hawaii State law is **DENIED**.

**C.    Excessive Force In Violation Of the Fourth and Fourteenth Amendments to the United States Constitution Pursuant to 42 U.S.C. § 1983**

**1.    Fourth Amendment: Excessive Force Claim**

A Section 1983 excessive force claim in violation of the Fourth Amendment to the United States Constitution is analyzed pursuant to the objective reasonableness standard set forth in Graham v. Connor, 490 U.S. 386, 388 (1989). Graham requires the Court to determine whether the officers' actions are "objectively reasonable" in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation. Hooper v. Cnty. of San Diego, 629 F.3d 1127, 1133 (9th Cir. 2011). The "objectively reasonable" test requires the Court to assess the gravity of the intrusion by evaluating the type and amount of force inflicted and to balance the extent of the intrusion against the government's interests. Miller v. Clark Cnty., 340 F.3d 959, 964 (9th Cir. 2003).

Police officers' use of force in response to school-related incidents must be reasonable in light of the circumstances and must not be excessively intrusive. New Jersey v. T.L.O., 469 U.S. 325, 341-42 (1985).

Here, Plaintiffs allege N.B. was subjected to excessive force by handcuffing. In Palmer v. Sanderson, 9 F.3d 1433, 1436 (9th Cir. 1993), the Ninth Circuit Court of Appeals found that plaintiff presented an excessive force claim because the officer fastened the handcuffs so tightly that they left bruises.

28

Plaintiffs allege that the use of adult handcuffs on N.B. resulted in marks on her wrists. (SAC at ¶ 62, ECF No. 48). The Second Amended Complaint alleges the use of handcuffs was excessive given the age, size, and disability of the ten-year-old girl N.B. Plaintiffs allege that N.B. was handcuffed while she was in custody at her school. (Id. at ¶ 101). The Second Amended Complaint alleges that N.B. was compliant and responsive to officers, she posed no physical threat to anyone, she was not resisting arrest, and she had not attempted to flee. (Id.)

The reasonableness of the use of force requires careful attention to the facts and circumstances of each particular case. Cnty. of Los Angeles, Cal. v. Mendez, 581 U.S. 420, 428 (2017). There are sufficient allegations in the Second Amended Complaint to plausibly state a claim for excessive force in violation of the Fourth Amendment.

The Defendant Officers argue that only the officer who placed the handcuffs on N.B. could be liable for excessive force. The Second Amended Complaint does not specify the particular actions by each officer with respect to handcuffing N.B. Plaintiffs, however, have alleged sufficient facts to support a claim against all of the officers for excessive force based on theories of either (1) failure to intervene or (2) as an integral participant in the excessive force. See Reynaga Hernandez v. Skinner, 969 F.3d 930, 941 (9th Cir. 2020); Nicholson v. City of Los Angeles, 935 F.3d 685, 691 (9th Cir. 2019); Lolli v. Cnty. of

29

Orange, 351 F.3d 410, 417-18 (9th Cir. 2003).

      **2.**    **Fourteenth Amendment: Due Process Claim Relating To Excessive Force**

As previously explained, the Ninth Circuit Court of Appeals has recognized that a parent has a Fourteenth Amendment liberty interest in familial companionship and society.  A parent may assert a substantive due process claim pursuant to the Fourteenth Amendment out of her relationship with a person subjected to excessive force if the conduct "shocks the conscience." Wilkinson v. Torres, 610 F.3d 546, 554 (9th Cir. 2010).

To determine whether an officer's use of force "shocks the conscience," the Ninth Circuit Court of Appeals has applied two subset standards: (1) deliberate indifference or (2) purpose to harm.  Porter v. Osborn, 546 F.3d 1131, 1137 (9th Cir. 2008). The determination of which standard to apply turns on whether actual deliberation was practical for the officer.  Id. at 1137-38.

"Where actual deliberation is practical, then an officer's 'deliberate indifference' may suffice to shock the conscience." Hayes v. Cnty. of San Diego, 736 F.3d 1223, 1230 (9th Cir. 2013). "On the other hand, where a law enforcement officer makes a snap judgment because of an escalating situation, his conduct may be found to shock the conscience only if he acts with a purpose to harm unrelated to legitimate law enforcement objectives."  Id. (citing Wilkinson, 610 F.3d at 554).

Here, there are no allegations that this was a rapidly escalating or dangerous situation that would require the purpose to harm standard.  See Hayes, 736 F.3d at 1230.  The Court applies the deliberate indifference standard to Plaintiffs' Fourteenth Amendment due process claim.  Id.

Plaintiffs have alleged that the Defendant Police Officers engaged in excessive force and deprived N.B and Plaintiff Taylor of their familiar association when the Defendant Officers handcuffed and arrested N.B. due to her race, disability, conduct, and statements, rather than related to any purported crime.

The Second Amended Complaint alleges that the Defendant Officers interrogated N.B. without Miranda warnings.  (SAC at ¶52, ECF No. 48).  The Second Amended Complaint contains allegations that the Defendant Officers became upset at N.B. and intended to punish her for treating their investigation as a joke, and because N.B. said to a nurse that she wondered what a day in jail would be like.  (SAC at ¶¶ 54-55, ECF No. 48).

Plaintiffs have put forth sufficient allegations in the Second Amended Complaint that Defendants Neves, Perez, and Ford acted with deliberate indifference to the child's and parent's rights to familial association and engaged in force that "shocks the conscience."  See Moreland v. Las Vegas Metro. Police Dep't, 159 F.3d 365, 372 (9th Cir. 1998); Curnow v. Ridgecrest Police, 952 F.2d 321, 325 (9th Cir. 1991).

31

### 3.   Qualified Immunity As To Plaintiffs' Excessive Force And Due Process Claims

Just as in the false arrest claim, Plaintiffs have cited numerous cases to support their position that it was clearly established that the Defendant Officers could not handcuff, arrest, and transport a ten-year-old disabled child for a drawing that she made with other children when she was compliant and not a physical threat.  C.B. v. City of Sonora, 769 F.3d 1005, 1030-31 (9th Cir. 2014) (en banc) (finding police officers' use of handcuffs on a calm, compliant 11-year-old child was unreasonable and officers were not entitled to qualified immunity); Tekle v. United States, 511 F.3d 839, 849-50 (9th Cir. 2007) (finding officers were not entitled to qualified immunity for detaining and handcuffing an 11-year old boy).

In C.B., the en banc panel of the Ninth Circuit Court of Appeals explained that applying handcuffs to an 11-year-old boy with ADHD while at school and "keeping him handcuffed for the approximately thirty minutes it took to drive to his uncle's business, was an obvious violation" of clearly established law. 769 F.3d at 1030.  The appellate court stated:

> It is beyond dispute that handcuffing a small, calm child who is surrounded by numerous adults, who complies with all of the officers' instructions, and who is, by an officer's own account, unlikely to flee, was completely unnecessary and excessively intrusive. Moreover, none of the Graham factors even remotely justified keeping C.B. handcuffed for approximately thirty minutes in the back seat of a safety-locked vehicle.

Id. at 1030-31.

Defendants' argument that there was no clearly established law regarding the handcuffing of minor children by 2020 is not well-taken. The holding in C.B. in October 2014 clearly established that the purported actions of the Defendant Honolulu Police Officers, if as alleged in the Second Amended Complaint, would be a constitutional violation and would preclude qualified immunity.

Defendant Officers Neves, Perez, and Ford's Motion to Dismiss Plaintiffs' claims for Excessive Force pursuant to Section 1983 is **DENIED.**

Defendant Officers Neves, Perez, and Ford's Request for Qualified Immunity for Excessive Force at this stage in the proceedings is **DENIED.**

Defendant Officers Neves, Perez, and Ford's Motion to Dismiss (ECF No. 51) is **DENIED.**

### III. Claims Brought Against Defendant City and County of Honolulu

#### A. False Arrest Pursuant to Hawaii State Law

As stated above, to assert a false arrest claim pursuant to Hawaii state law, a plaintiff must allege:

(1)  the detention or restraint of one against her will; and,

(2)  the unlawfulness of such detention or restraint.

Reed v. City & Cnty. of Honolulu, 873 P.2d 98, 109 (Haw. 1994).

The Second Amended Complaint alleges sufficient facts to support the claim that there was no probable cause to arrest N.B. for Terroristic Threatening or any other charge.

The false arrest claim pursuant to Hawaii law may be brought against Defendant City and County of Honolulu pursuant to a theory of respondeat superior. <u>Alexander v. City & Cnty. of Honolulu</u>, 545 F.Supp.2d 1122, 1136 (D. Haw. Feb. 28, 2008); <u>see Doe Parents No. 1 v. State, Dep't of Educ.</u>, 58 P.3d 545, 578-79 (Haw. 2002).

Defendant City and County of Honolulu's Motion to Dismiss Plaintiffs' claims for False Arrest pursuant to Hawaii state law is **DENIED.**

**B.   <u>Monell Liability</u> For Excessive Force Based On Both A Failure To Train And For Unconstitutional Customs, Practices, And Policies**

Plaintiffs assert Section 1983 claims against the Defendant City and County of Honolulu as a municipality pursuant to <u>Monell v. Dep't of Social Servs. of City of New York</u>, 436 U.S. 658, 691 (1978).

Plaintiffs bring two separate <u>Monell</u> claims.

<u>First</u>, Plaintiffs allege a <u>Monell</u> claim against the Defendant City and County of Honolulu based on failure to adequately train the Defendant Honolulu Police Officers Neves, Perez, and Ford.

<u>Second</u>, Plaintiffs allege a <u>Monell</u> claim against the

Defendant City and County of Honolulu based on unconstitutional customs, practices, and policies of the Honolulu Police Department.

### 1.   __Monell__ Liability for Inadequate Training

A local government entity's failure to train its employees can create Monell liability where the failure to train amounts to deliberate indifference to the rights or persons with whom those employees are likely to come into contact.  Lee, 250 F.3d at 681. It is only where the failure to train reflects a deliberate or conscious choice by a municipality that the municipality may be liable.  City of Canton, Ohio v. Harris, 489 U.S. 378, 389 (1989).

A plaintiff seeking to bring a Monell claim based on a failure to train must identify a deficiency in a local governmental entity's training program and must allege sufficient facts to prove that the deficiency is closely related to the ultimate injury.  Lee, 250 F.3d at 681.  A plaintiff must allege sufficient facts to demonstrate that the constitutional injury would have been avoided had the governmental entity trained its employees properly.  Jackson v. Barnes, 749 F.3d 755, 763 (9th Cir. 2014); Oviatt by and through Waugh v. Pearce, 954 F.2d 1470, 1478 (9th Cir. 1992).  This requires a showing that the municipality was on actual or constructive notice that its omission would likely result in a constitutional violation, and

not that one of its employees was a poor trainer or supervisor. Jackson, 749 F.3d at 763. Mere negligence in training or supervision does not give rise to a Monell claim. Dougherty v. City of Covina, 654 F.3d 892, 900 (9th Cir. 2011).

In addition, a plaintiff must show more than one employee was inadequately trained; there must be a widespread practice. Ismail v. Freeman, 936 F.Supp.2d 1157, 1164 (C.D. Cal. 2012) (citing Marsh v. Cnty. of San Diego, 680 F.3d 1148, 1159 (9th Cir. 2012)).

A pattern of similar constitutional violations by untrained employees is generally necessary to demonstrate deliberate indifference for failure to train. Connick v. Thompson, 563 U.S. 51, 62 (2011). There are various methods to plead a pattern or practice claim. Courts have explained that pleading statistics about unconstitutional excessive force complaints or pleading examples of successful excessive force lawsuits filed before the incident are sufficient to put the municipality on notice of constitutional violations. Id. at 71-72; Bagley v. City of Sunnyvale, 2017 WL 5068567, *6 (N.D. Cal. Nov. 3, 2017).

Without notice that a course of training is deficient in a particular respect, decisionmakers cannot be said to have deliberately chosen a training program that will cause violations of constitutional rights. Connick, 563 U.S. at 71-72.

A plaintiff asserting a Monell claim based on failure to train must identify how the municipality's training was

36

inadequate and how the inadequate training represents municipal policy.  Long v. Cnty. of Los Angeles, 442 F.3d 1178, 1186 (9th Cir. 2006).

Here, Plaintiffs' conclusory allegations that the training was inadequate are insufficient to state a claim.  Plaintiffs do not allege how the City and County failed to train its officers, what topics were not covered in the training, how the training was deficient, or how the inadequate training caused the constitutional violation alleged.  Sanders v. City of Nat'l City, 2020 WL 6361932, *3-*4 (S.D. Cal. Oct. 29, 2020).

Merely alleging that the defendants acted with deliberate indifference is conclusory and insufficient.  Herd v. Cnty. of San Bernardino, 311 F.Supp.3d 1157, 1168-69 (C.D. Cal. 2018).

Plaintiffs have not alleged that the City and County of Honolulu previously investigated, disciplined, or reprimanded the Individual Officers in this case.

While there are allegations that the City and County of Honolulu itself was placed on notice as to the inadequacy of its training program, there is insufficient information as to the actual training program and its deficiencies that is required to state a Section 1983 Monell claim for failure to train.  See AE ex rel Hernandez, 666 F.3d at 637.

Defendant City and County of Honolulu's Motion to Dismiss Plaintiffs' claim for Monell liability based on a failure to adequately train is **GRANTED WITH LEAVE TO AMEND.**

2.   __Monell__ **Liability for Unconstitutional Custom,**
     **Practice, or Policy**

A plaintiff may assert a __Monell__ claim for municipal
liability by demonstrating that an official policy, custom, or
pattern on the part of the municipality was the actionable cause
of the claimed injury.  __Tsao v. Desert Palace, Inc.__, 698 F.3d
1128, 1143 (9th Cir. 2012) (quoting __Harper v. City of Los__
__Angeles__, 533 F.3d 1010, 1022 (9th Cir. 2008) (quotation marks
omitted)).

a.   **Pleading Standard To State A __Monell__ Claim**
     **Based On An Unconstitutional Custom Or Policy**

To bring a claim based on an unconstitutional policy or
custom, there must be sufficient allegations that:

(1)   the plaintiff was deprived of a constitutional right;

(2)   the municipality had a policy;

(3)   the policy amounted to deliberate indifference to the
      plaintiff's constitutional right; and,

(4)   the policy was the moving force behind the
      constitutional violation.

__Mabe v. San Bernadino Cnty., Dep't of Pub. Soc. Servs.__, 237
F.3d 1101, 1110-11 (9th Cir. 2001).

The policy may be one of action or inaction for the policy
to amount to a failure to protect constitutional rights.  The
policy of inaction must be the result of a conscious or
deliberate choice made from various alternatives.  __Lee__, 250 F.3d
at 681.

Liability for improper custom may not be predicated on isolated or sporadic incidents, but it must be founded upon practices of sufficient duration, frequency, and consistency that the conduct has become a traditional method of carrying out policy.  Trevino v. Gates, 99 F.3d 911, 918 (9th Cir. 1996), modified on other grounds in Navarro v. Block, 250 F.3d 729 (9th Cir. 2001); see also Christie v. Iopa, 176 F.3d 1231, 1235 (9th Cir. 1999).

The mere existence of a policy of inaction, without more, is insufficient to trigger Monell liability.  Canton, 489 U.S. at 389.  A plaintiff must provide sufficient allegations to demonstrate that the policy evidences a deliberate indifference to plaintiff's constitutional rights.  Canton, 489 U.S. at 389. A plaintiff must demonstrate that a municipal decision reflects deliberate indifference to the risk that a violation of a particular constitutional right will follow the decision.  Bd. of Cnty. Comm'rs of Bryan Cnty., Okl. v. Brown, 520 U.S. 397, 411 (1997).

A plaintiff must also demonstrate that the policy is the moving force behind the ultimate injury.  Oviatt, 954 F.2d at 1474.  The identified deficiency in the policy must be closely related to the injury in order for a policy to be a moving force behind the deprivation of a constitutional right.  Long, 442 F.3d at 1190.  A plaintiff must establish that the injury would have been avoided if the proper policies had been implemented.  Id.

39

The Ninth Circuit Court of Appeals has made clear that
Monell claims may not simply recite the elements of a cause of
action, but they must contain sufficient allegations of
underlying facts to give fair notice and to enable the opposing
party to effectively defend itself.  AE ex rel. Hernandez, 666
F.3d at 637.  The plaintiff must also identify the particular
policy or custom that caused the constitutional violation without
resorting to conclusory statements.  Est. of Osuna v. Cnty. of
Stanislaus, 392 F.Supp.3d 1162, 1174 (E.D. Cal. 2019).

> **b.    There Are Sufficient Allegations To Plausibly
> State A Monell Claim Based On An
> Unconstitutional Custom, Practice, Or Policy**

Plaintiffs point to official Honolulu Police Department
Policies No. 4.33 and 7.02 as the policies that led to the
alleged unconstitutional violations in this case.  Plaintiffs
claim these policies required putting children suspected of
crimes in handcuffs, including children with disabilities,
regardless of whether handcuffs were necessary.

Plaintiffs cite statistics compiled by the Honolulu Police
Department and analyzed in a report by sociologists from the
University of Hawaii at Manoa to support their claim that there
is a pattern of constitutional violations by Honolulu Police
Officers particularly against students who are Black and/or
disabled.  (SAC at ¶¶ 83-85, 87, ECF No. 48).  Plaintiffs also
cite to a report concerning disproportionate use of force by

40

members of the Honolulu Police Department against Hawaii's Black community.  (Id. at ¶ 86).

Plaintiffs assert that "[b]ased on this data and upon information and belief, the City and HPD have maintained and continue[] to maintain, with deliberate indifference, a policy and practice of disproportionally arresting and using force on Black people in general, and Black and disabled students and children in particular, including N.B."  (Id. at ¶ 89).

Plaintiffs have plausibly alleged sufficient facts to support a Monell claim based on a policy, pattern, or practice as the moving force behind the alleged unconstitutional harm in this case.  Brown, 520 U.S. at 404; Connick, 563 U.S. at 71-72.

Defendants' Motion to Dismiss Plaintiffs' Monell liability claim for an alleged unconstitutional policy, practice, or custom is **DENIED**.

### C.   Violations of **Title VI of the Civil Rights** Act

Title VI of the Civil Rights Act of 1964 provides: "No person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance."  42 U.S.C. § 2000d.

Private individuals may sue to enforce Title VI, but the private right of action only extends to cases of intentional

41

discrimination and not disparate impact.  Alexander v. Sandoval, 532 U.S. 275, 278-81 (2001).

To assert intentional discrimination, Plaintiffs must allege that the actions of the City and County of Honolulu were discriminatory, and that the City and County of Honolulu acted with an intent or purpose to discriminate based upon Plaintiffs' membership in a protected class.  The Comm. Concerning Cmty. Improvement v. City of Modesto, 583 F.3d 690, 702-03 (9th Cir. 2009).

Here, Plaintiffs have adequately alleged a claim for racial discrimination against the Defendant City and County of Honolulu. The Second Amended Complaint alleges that the City and County of Honolulu was deliberately indifferent to the fact that its officers disproportionately arrested and restrained Black students.  (SAC at ¶ 89, ECF No. 48).  Intentional discrimination pursuant to Title VI may be established through a showing of deliberate indifference.  See Monteiro v. Tempe Union High Sch. Dist., 158 F.3d 1022, 1033 (9th Cir. 1998) (finding that a school district may violate Title VI if there is a racially hostile environment, the district had notice of the problem, and it failed to respond).

Plaintiffs have alleged sufficient facts to state a claim that the Defendant Officers created a hostile environment where they sequestered N.B. from her mother, prevented N.B. from speaking to her mother, interrogated N.B., and handcuffed and

arrested N.B. without her mother's knowledge.  Plaintiffs assert this was done intentionally because the Defendant Officers held prejudiced assumptions that Plaintiff Taylor was an "angry Black woman."  (SAC at ¶¶ 55, 56, 61, 118, ECF NO. 48; see Pl.'s Opp. at p. 13, ECF No. 107).

Plaintiffs also allege that N.B. was discriminated against because of her race, and that the Officers were motivated by N.B.'s race when they arrested her.  (SAC at ¶ 118(d), n.5, ECF No. 48).  While the Individual Officers may not be individually liable for a Title VI claim, the City and County of Honolulu may be liable based on a theory of deliberate indifference to the alleged intentional discrimination.  See West v. City and Cnty. of San Francisco, 2022 WL 1556415, *10 (N.D. Cal. May 17, 2022).

Defendant City and County of Honolulu's Motion to Dismiss Plaintiffs' Title VI Claim is **DENIED**.

D.    **Violations of <u>Title II of the Americans With Disabilities Act</u> And <u>Section 504 of the Rehabilitation Act</u>**

Title II of the Americans With Disabilities Act of 1990 ("ADA") prohibits a public entity from discriminating against any "qualified individual with a disability."  Sheehan v. City and Cnty. of San Francisco, (Sheehan I), 743 F.3d 1211, 1231 (9th Cir.) cert. granted sub nom., 574 U.S. 1021 (2014), and rev'd in part, cert. dismissed in part sub nom.  City and Cnty. of San Francisco, Calif., (Sheehan II), 575 U.S. 600, 617 (2015).

Title II of the ADA was expressly modeled after Section 504 of the Rehabilitation Act, which provides:

> No otherwise qualified individual with a disability shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance.

29 U.S.C. ¶ 794.

To state a claim pursuant to Title II of the ADA, a plaintiff must show:

> (1)  she is an individual with a disability;
>
> (2)  she was excluded from participation in or otherwise discriminated against with regard to the public entity's services, programs, or activities; and,
>
> (3)  such exclusion or discrimination was by reason of her disability.

Lovell v. Chandler, 303 F.3d 1039, 1052 (9th Cir. 2002).

A claim pursuant to Section 504 of the Rehabilitation Act is similar to a claim pursuant to Title II of the ADA but requires the plaintiff to demonstrate she was discriminated against "solely by reason of her disability." See Updike v. Multnomah Cnty., 870 F.3d 939, 949-50 (9th Cir. 2017) (citing Duvall v. Cnty. of Kitsap, 260 F.3d 1124, 1135 (9th Cir. 2001)).

The Ninth Circuit Court of Appeals has determined that Title II of the ADA applies to law enforcement investigations and arrests. Sheehan I, 743 F.3d at 1232.

The Ninth Circuit Court of Appeals has recognized two types of Title II ADA claims applicable to arrests:

> (1)   a wrongful arrest claim where the police wrongly arrest someone with a disability because they misperceive the effects of that disability as criminal activity; and,
>
> (2)   a reasonable accommodation claim where the police fail to reasonably accommodate the person's disability in the course of investigation or arrest, causing the person to suffer greater injury than other arrestees.

Sheehan I, 743 F.3d at 1232.


### 1.   Wrongful Arrest - Disability Discrimination


Plaintiffs' conclusory allegation that the Defendant Officers should have known of N.B.'s disability is insufficient. There are no facts alleged to establish N.B.'s behavior during her encounter with the police officers that would support her claim that they reasonably should have known she was disabled.

Plaintiffs must demonstrate that N.B.'s ADHD condition itself was misperceived as criminal activity in order to state an ADA claim for wrongful arrest.  The Second Amended Complaint does not provide allegations to support such a claim.  To the contrary, the allegations in the Second Amended Complaint are that N.B. was calm, compliant, and did not act in a way that would have caused the Defendant Police Officers to have specific concerns regarding a potential disability.  There are no allegations that she showed signs of attention deficit.  There are no allegations that she displayed signs of hyperactivity or that she acted irrationally, erratically, or in a manner that would cause the Defendant Officers to believe she was disabled.

Plaintiffs have failed to assert a claim for wrongful arrest

in violation of the ADA.

## 2. Reasonable Accommodation - Disability Discrimination

To state a reasonable accommodation claim related to an arrest, a disabled individual must show that the public entity had knowledge that the individual was disabled, either because that disability is obvious or because the individual or someone else informed the entity of the disability.  <u>Robertson v. Las Animas Cnty. Sheriff's Dep't</u>, 500 F.3d 1185, 1196 (10th Cir. 2007).

Plaintiffs have not provided any allegations that the Defendant City and County of Honolulu knew or should have known N.B. was disabled.  Plaintiffs allege that the Department of Education knew because N.B. had a Section 504 education plan, but there is no basis in the Second Amended Complaint to find that the Defendant City and County of Honolulu was informed either by N.B., Plaintiff Taylor, or anyone else about N.B.'s ADHD.  In addition, there is no evidence that her ADHD was so obvious that there was a need for an accommodation.  <u>Id.</u>

Plaintiffs' assertion that the Police Officers should have assumed N.B. was disabled and needed an accommodation is incorrect.  Plaintiffs' theory is not supported by the law or the allegations in the Second Amended Complaint.  The Second Amended Complaint contains insufficient facts to support Plaintiffs' reasonable accommodation claim.

46

Defendant City and County of Honolulu's Motion to Dismiss Plaintiffs' Title II of the Americans With Disabilities Act and Section 504 of the Rehabilitation Act Claims is **GRANTED WITH LEAVE TO AMEND**.

> E.   **Negligent Training** And **Negligent Supervision** Pursuant To Hawaii State Law
>
>> 1.   **Negligent Training**

The elements of a negligent training claim pursuant to Hawaii state law have not been established by the Hawaii state courts. <u>Vargas v. City and Cnty. of Honolulu</u>, Civ. No. 19-00116 LEK-WRP, 2020 WL 3547941, *20-21 (D. Haw. June 30, 2020).

California courts give some guidance.  California law requires the following elements for a negligent training claim: (1) the employer negligently trained the employee regarding the performance of his job duties, (2) which led the employee, in the course of executing his job duties, (3) to cause an injury or damages to the plaintiff.  <u>Garcia ex rel. Marin v. Clovis Unified Sch. Dist.</u>, 627 F.Supp.2d 1187, 1208 (E.D. Cal. 2009).

There are no allegations in the Second Amended Complaint concerning the training provided to the individual police officers involved in this case.  There are also no allegations as to why the training was deficient and how it led a particular officer to cause any of the individual Plaintiffs' injuries. Plaintiffs' conclusory allegations that the police officers received inadequate training and that the inadequate training

47

caused harm are insufficient to plausibly state a claim.

Defendant City and County of Honolulu's Motion to Dismiss Plaintiffs' Negligent Training Claim against Defendant City and County of Honolulu is **GRANTED WITH LEAVE TO AMEND**.

### 2. Negligent Supervision

In its briefing on the issue, Defendant City and County of Honolulu argues that this Judge is the only Hawaii court to rule that there are two types of negligent supervision claims. (Reply at p. 19, ECF No. 112). Defendant City and County of Honolulu asserts that negligent supervision claims can only be based on actions of an employee acting outside their employment, citing Krizek v. Queens Med. Ctr., 18-cv-00293 JMS-WRP, 2021 WL 2115428, *7 (D. Haw. May 25, 2021).

Defendant City and County of Honolulu misunderstands the Hawaii state law holdings on negligent supervision.

### a. The Hawaii Supreme Court Reviewed Negligent Supervision Claims In The Context Of An Insurance Dispute in Dairy Road Partners

In Dairy Road Partners v. Island Insurance Company, 992 P.2d 93, 121-22 (2000), the Hawaii Supreme Court analyzed a claim for insurance coverage. A complaint was filed alleging that an employee of Dairy Road Partners drove drunk and killed a man. Id. at 98. A complaint was filed against Dairy Road Partners for damages, stating that it failed to properly supervise its

48

employee who was "acting within the scope of his employment" at the time of the accident.  Id.

Dairy Road Partners filed its own lawsuit seeking insurance coverage for the underlying suit.  Dairy Road Partners filed a declaratory judgment action against its insurer, Island Insurance Company, arguing the insurer owed Dairy Road Partners a duty to defend and indemnify arising out of the underlying complaint for damages.  Id.  The Hawaii Circuit Court ruled that Island Insurance Company did not owe Dairy Road Partners a duty to defend nor to indemnify it for the underlying complaint for damages.  Id. at 105.

On appeal, the Hawaii Supreme Court ruled that there was a duty to defend Dairy Road Partners pursuant to the business auto policy issued by Island Insurance, but the Hawaii Supreme Court ruled there was no duty to indemnify.  Id. at 118-20.

The Hawaii Supreme Court reviewed the Restatement (Second) of Torts § 317.  Id. at 122.  Section 317 provides that a master is under a duty to exercise reasonable care so as to control his servant while acting **outside** the scope of his employment.  Id.

The Hawaii Supreme Court explained there was no duty to indemnify for the damages caused by the drunk driving employee. Id.  The appellate court explained that there was no duty to indemnify based on a theory of negligent supervision because under Section 317 of the Restatement (Second) of Torts, there must be proof that the employee was acting outside the scope of

49

his employment, which was contrary to the theory presented in the complaint that the employee was acting **within** the scope of his employment.   Id.

The appellate court explained that there was also no duty to indemnify for negligent supervision even if the employee was acting within the scope of his employment, because the policy had an exclusion for such claims.   Id.

### b.   **Dairy Road Partners** **Relies On Restatement (Second) of Torts § 317**

The Hawaii Supreme Court stated in Dairy Road Partners that negligent supervision claims generally "may only be found where an employee is acting outside of the scope of his or her employment."   Id. at 122.

The Hawaii Supreme Court clarified in the same order, however, that a negligence claim premised on negligent supervision may be brought against an employer for the acts of its employee who was acting **within** the scope of his employment based on the theory of respondeat superior.   Id. at 121 (citing Wong-Leong v. Hawaiian Independent Refinery, Inc., 879 P.2d 538, 543 (Haw. 1994)).

### c.   **Hawaii Supreme Court Expanded Its Views On Negligent Supervision Claims In** **Doe Parents No. 1 v. Hawaii Dep't of Education**

In 2002, the Hawaii Supreme Court in Doe Parents No. 1 v. Hawaii State Department of Education, 58 P.3d 545, reiterated

that a government employer may be liable for negligent supervision where the supervisor is negligent, even when acting <u>within</u> the scope of his or her employment.

In <u>Doe Parents</u>, a teacher was reinstated to his position after being acquitted of child molestation.  The teacher subsequently molested other children and the parents of the molested children sued the Hawaii Department of Education for negligence.

The Hawaii Department of Education argued that it could not be liable for the molestation of the children under a theory of respondeat superior because it has immunity from the intentional actions of the teacher pursuant to the State Tort Liability Act. <u>Id.</u> at 578.  The Hawaii Supreme Court agreed that the State could not be liable for the intentional acts of the teacher.  <u>Id.</u>  The appellate court explained, however, that the State was liable based on the negligence of his supervisors who were also employees of the State.  <u>Id.</u> at 590.

The Hawaii Supreme Court ruled that the State was not liable for the teacher's molestation itself, but it was liable for the negligence of the supervisors who reinstated the teacher and failed to properly supervise the teacher after they were on notice regarding the teacher's dangerousness, even where they were acting within the scope of their employment.  <u>Id.</u> at 598.

        **d.**    **Hawaii Federal District Courts Have Found There Are Two Theories By Which A Plaintiff May Bring A Cause Of Action Based On The Alleged Failure To Properly Supervise An Employee**

In 2007, a Hawaii District Court Judge synthesized the cases from the Hawaii Supreme Court to explain that negligence claims based on a theory of failure to properly supervise employees have led Hawaii courts to recognizes two types of claims alleging negligent supervision: one that seeks relief from acts occurring outside the scope of employment based on the Restatement (Second) of Torts, and one that seeks relief from acts that happened in the scope of employment based on Doe Parents. Black v. Correa, No. CV 07-00299 DAE-LK, 2007 WL 3195122, at *10-11 (D. Haw. Oct. 30, 2007).

Other Judges in this District have similarly ruled. See Dowkin v. Honolulu Police Dep't, Civ. No. 10-00087 SOM-LK, 2010 WL 4961135, at *3 (D. Haw. Nov. 30, 2010); Kaahu v. Randall, No. CV 14-00266 HG-RLP, 2018 WL 472996, *7 (D. Haw. Jan. 18, 2018).

Defendant City and County of Honolulu's argument in its Reply ignores the Hawaii Supreme Court's holding in Doe Parents and the cases recognizing that negligence claims against an employer may be premised on a failure to supervise an employee acting within the scope of his employment pursuant to respondeat superior liability. See Wong-Leong, 879 P.2d at 543.

Recently, in Yoshikawa v. City and County of Honolulu, 18-cv-00162 JAO-RT, 542 F.Supp.3d 1099, 1122 (D. Haw. 2021), another

Hawaii District Judge addressed the confusion by the Defendant
City and County of Honolulu, explaining the two "types" of
negligence claims based on failure to properly supervise and set
forth the elements of each theory.

Here, the Second Amended Complaint seeks to hold the City
and County of Honolulu liable on the basis that it negligently
failed to supervise its officers who acted within the course and
scope of their duties.

A negligent supervision claim based on allegations that the
officers acted within the scope of their employment is based on
the respondeat superior theory of liability.   Black, 2007 WL
3195122 at *10-11.

To state such a claim, Plaintiffs must allege that an
employee, acting as a supervisor on behalf of the City and County
of Honolulu, failed to supervise other employees for which the
City and County is liable.  Ryder v. Booth, Civ. No. 16-00065 HG-
KSC, 2016 WL 2745809, at *11 (D. Haw. May 11, 2016).  Plaintiffs
must allege the supervisor's duty, the breach of that duty, and
how the breach caused damages.  Plaintiffs must provide
allegations as to what specific acts each officer did within the
scope of his or her employment that his or her supervisor, on
behalf of the City and County of Honolulu, failed to properly
supervise.  Dowkin, 2010 WL 4961135, at *3.

There are no facts alleged as to what supervision was
required as to a particular officer and why such supervision

53

would have prevented the alleged harm to Plaintiffs.  General allegations that the City and County of Honolulu negligently supervised all of the officers are insufficient to state a claim against the City and County of Honolulu.

Defendant City and County of Honolulu's Motion to Dismiss Plaintiffs' Negligent Supervision Claim against Defendant City and County of Honolulu is **GRANTED WITH LEAVE TO AMEND.**

**CONCLUSION**

DEFENDANT CITY AND COUNTY OF HONOLULU'S MOTION TO DISMISS (ECF No. 50) is **GRANTED, IN PART, and DENIED, IN PART, WITH LEAVE TO AMEND.**

DEFENDANTS CHRISTINE NEVES, COREY PEREZ, AND WARREN FORD'S MOTION TO DISMISS (ECF No. 51) is **DENIED.**

**The Court's rulings in this Order are summarized as follows:**

I.   Plaintiff's claims for violations of the Hawaii State Constitution pursuant to 42 U.S.C. § 1983 are **DISMISSED WITH PREJUDICE.**

II.  The DRAWING at issue remains **UNDER SEAL.**  Plaintiffs' reference to the drawing in the Second Amended Complaint does not alter the Court's analysis as to it remaining under seal.  The Court is without sufficient information to determine the drawing's authorship, chain of custody, or publication that would allow the Court to unseal the drawing at this time.

III. The following causes of action remain with **LEAVE TO AMEND** as indicated:

1.   **FALSE ARREST** In Violation Of the **Fourth Amendment to the United States Constitution** Pursuant to 42 U.S.C. § 1983 against **Defendants Christine Neves, Corey Perez,**

54

and Warren Ford.

> Plaintiff N.B. has plausibly stated a Section 1983 claim for False Arrest against the Defendant Officers.

> **Defendants Christine Neves, Corey Perez, and Warren Ford's** request for <u>qualified immunity</u> as to the federal law claim for false arrest at this stage in the proceedings is **DENIED.**

2. **<u>FALSE ARREST</u>** Resulting in <u>Equal Protection</u> and <u>Due Process</u> Violations of the **Fourteenth Amendment to the United States Constitution** Pursuant to 42 U.S.C. § 1983 against **Defendants Christine Neves, Corey Perez, and Warren Ford.**

> Plaintiffs have plausibly stated a Section 1983 claim for violations of the Fourteenth Amendment related to N.B.'s alleged false arrest against the Defendant Officers.

> Defendants' argument that Plaintiff Tamara Taylor lacks standing to bring such a cause of action or otherwise waived bringing such a claim is contrary to settled law in the Ninth Circuit Court of Appeals.

3. **<u>FALSE ARREST</u>** Pursuant to **Hawaii State Law** against **Defendants Christine Neves, Corey Perez, and Warren Ford AND Defendant City and County of Honolulu**

> Plaintiff N.B. has plausibly stated a state law claim for False Arrest against both the Defendant Officers and the Defendant City and County of Honolulu.

> **Defendants Christine Neves, Corey Perez, and Warren Ford's** request for <u>conditional privilege</u> as to the state law claim for false arrest at this stage in the proceedings is **DENIED.**

4. **<u>EXCESSIVE FORCE</u>** In Violation Of the **Fourth Amendment to the United States Constitution** Pursuant to 42 U.S.C. § 1983 against **Defendants Christine Neves, Corey Perez, and Warren Ford**

Plaintiff N.B. has plausibly stated a Section 1983 claim for Excessive Force against the Defendant Officers.

**Defendants Christine Neves, Corey Perez, and Warren Ford's** request for <u>qualified immunity</u> as to the federal law claim for excessive force at this stage in the proceedings is **DENIED**.

5.   **<u>EXCESSIVE FORCE</u>** Resulting In <u>Due Process</u> Violations of the **<u>Fourteenth Amendment</u>** <u>to the United States Constitution</u> Pursuant to 42 U.S.C. § 1983 against **Defendants Christine Neves, Corey Perez, and Warren Ford**

Plaintiffs have plausibly stated a Section 1983 claim for violations of the Fourteenth Amendment related to the alleged use of excessive force.

Defendants' argument that Plaintiff Tamara Taylor lacks standing or otherwise waived her ability to bring such a cause of action is contrary to settled law in the Ninth Circuit Court of Appeals.

6.   **Monell Liability** For Excessive Force Based On **<u>FAILURE TO TRAIN</u>** against **Defendant City and County of Honolulu**

Plaintiffs have not plausibly stated a Section 1983 claim for Failure to Train against Defendant City and County of Honolulu.  The claim is **DISMISSED WITH LEAVE TO AMEND.**

7.   **<u>Monell Liability</u>** For Excessive Force Based On **<u>UNCONSTITUTIONAL CUSTOM, PRACTICE, OR POLICY</u>** against **Defendant City and County of Honolulu**

Plaintiff N.B. has plausibly stated a Section 1983 claim for an Unconstitutional Custom, Practice, Or Policy against Defendant City and County of Honolulu related to the use of handcuffs and the alleged use of excessive force while arresting N.B.

8.   Violations of **<u>TITLE VI OF THE CIVIL RIGHTS ACT</u>** against **Defendant City and County of Honolulu**

Plaintiffs have plausibly stated a claim for violations of Title VI of the Civil Rights Act related to the alleged racial discrimination against N.B. and her mother Plaintiff Tamara Taylor.

**9.** Violations of <u>Title II of the</u> **Americans With Disabilities Act ("ADA")** And <u>Section 504 of the</u> **REHABILITATION ACT** against **Defendant City and County of Honolulu**

Plaintiffs have not plausibly stated an ADA or Rehabilitation Act claim against Defendant City and County of Honolulu.  The claims are **DISMISSED WITH LEAVE TO AMEND.**

**10.** **NEGLIGENT TRAINING** pursuant to Hawaii State Law against **Defendant City and County of Honolulu**

Plaintiffs have not plausibly stated a state law claim for Negligent Training against Defendant City and County of Honolulu.  The claim is **DISMISSED WITH LEAVE TO AMEND.**

**11.** **NEGLIGENT SUPERVISION** pursuant to Hawaii State Law against **Defendant City and County of Honolulu**

Plaintiffs have not plausibly stated a state law claim for Negligent Supervision against Defendant City and County of Honolulu.  The claim is **DISMISSED WITH LEAVE TO AMEND.**

**LEAVE TO AMEND:**

Plaintiffs are given **LEAVE TO AMEND** and may file a Third Amended Complaint on or before **Tuesday, April 25, 2023.**  The Third Amended Complaint must conform to the rulings contained in this Order.

Leave to Amend is granted to allow Plaintiffs to provide additional facts as necessary and to clarify inconsistencies identified in this Order.  Plaintiffs are instructed to amend their complaint such that each count specifies a separate cause of action, specifies the law applicable to that cause of action, and names the plaintiffs and defendants subject to that cause of action.

Leave to Amend is specifically granted as to the following causes of action:

    **(1)**   **Monell Liability for Inadequate Training**

    **(2)**   Violations of **Title II of the Americans With Disabilities Act** of 1990 ("ADA"), 42 U.S.C. § 12101, <u>et seq.</u> and **Section 504 of the Rehabilitation Act**, 29 U.S.C. § 794;

    **(3)**   **Negligent Training** pursuant to Hawaii state law;

    **(4)**   **Negligent Supervision** pursuant to Hawaii state law;

Failure to file a Third Amended Complaint on or before **Tuesday, April 25, 2023,** will result in automatic dismissal with prejudice of these four counts dismissed in this Order.

Plaintiffs may not allege any new causes of action in the Third Amended Complaint. Plaintiffs may not add any additional Defendants in the Third Amended Complaint.

    IT IS SO ORDERED.

    DATED: March 31, 2023, Honolulu, Hawaii.

Helen Gillmor
United States District Judge

<u>Tamara Taylor, Individually, and on behalf of her minor child, N.B.; N.B. v. City and County of Honolulu; Hawaii State Department of Education; Terri Runge; Christine Neves; Corey Perez; Warren Ford; HPD Defendants 1-10; DOE-HI Defendants 1-10,</u> Civ. No. 22-00013 HG-KJM; **ORDER GRANTING, IN PART, AND DENYING, IN PART, DEFENDANT CITY AND COUNTY OF HONOLULU'S MOTION TO DISMISS SECOND AMENDED COMPLAINT (ECF No. 50) WITH LEAVE TO AMEND and DENYING DEFENDANTS CHRISTINE NEVES, COREY PEREZ, AND WARREN FORD'S MOTION TO DISMISS SECOND AMENDED COMPLAINT (ECF No. 51)**